Argued and submitted April 5, reversed and remanded June 19, 1984

The JEFFERSON LANDFILL COMMITTEE et al,
*Petitioners on Review,*

*v.*

MARION COUNTY et al,
*Respondents on Review.*

(LUBA 82-005, CA A25167, SC S30235)

686 P2d 310

M. Chapin Milbank, Salem, argued the cause and filed the brief for petitioners.

Robert C. Cannon, Marion County Legal Counsel, Salem, argued the cause and filed a brief on behalf of respondent Marion County.

Richard C. Stein, Salem, filed a response and argued the cause for respondents W.R. Schlitt, W.R. Schlitt, Jr. and Brown's Island, Inc. With him on the brief was Ramsay, Stein, Feibleman and Myers, Salem.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Mary J. Deits, Assistant Attorney General and Michael J. Huston, Assistant Attorney General, Salem, filed a response brief in the Supreme Court on behalf of the Land Use Board of Appeals.

CARSON, J.

## CARSON, J.

Marion County granted a conditional use permit and major partition to allow the siting of a landfill for Marion County, south of Salem and just east of Interstate 5, near the Jefferson interchange. Petitioners appealed the land use decision to the Land Use Board of Appeals (LUBA), which dismissed the appeal on the ground that petitioners lacked standing to appeal. The Court of Appeals affirmed LUBA's order. *Jefferson Landfill Comm. v. Marion Co.,* 65 Or App 319, 671 P2d 763 (1983).

We allowed review because LUBA's order was based on the opinions of the Court of Appeals in *Clark v. Dagg,* 38 Or App 71, 588 P2d 1298, *rev den* 286 Or 637 (1979) and *Benton County v. Friends of Benton County,* 56 Or App 567, 642 P2d 358 (1982). After LUBA's decision, this court decided *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982), which expressed different principles for analyzing the pertinent statutory terms from those LUBA had drawn from the earlier opinions of the Court of Appeals. However, because we affirmed the result in *Benton County,* the Court of Appeals treated our analysis in that case as dictum and affirmed LUBA in the present case on the basis of earlier Court of Appeals' opinions. We accepted review to clarify the statutory test for standing to appeal a local land use decision to LUBA. We reverse for the reasons stated below.

## I. STANDING TO APPEAL TO LUBA

The issue this case presents is whether LUBA erred in concluding that petitioners lacked standing to appeal under section 4(3) of Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748, section 35.[1] Section 4(3) provides:

"Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

---

[1] Subsequent to our opinion in *Benton County v. Friends of Benton County,* 294 Or 79, 653 P2d 1249 (1982) this section was repealed by Oregon Laws 1983, chapter 827, section 59, effective October 1, 1983. Section 31(3) of the 1983 act (codified at ORS 197.830) establishes standing criteria for appeals to LUBA from quasi-judicial land use decisions. We note that the legislature retained the separate phrases "is aggrieved or has interests adversely affected."

"(a) Appeared before the local government or special district governing body or state agency orally or in writing; and

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

All parties agree that the land use decision was quasi-judicial, "that is to say, a decision limited in time and space to specific facts and named addressees rather than one promulgating a general rule addressed to an open class of persons and future events, and it has been adopted in a quasijudicial proceeding." *Benton County v. Friends of Benton County, supra,* 294 Or at 88. To appeal a quasi-judicial decision, section 4(3) requires that the petitioner have appeared orally or in writing before the local body making the decision to be reviewed, *and* be either a person who is entitled as of right to prior notice and hearing *or* whose interests were adversely affected *or* who was aggrieved by the decision.　　　•

In *Benton County v. Friends of Benton County, supra,* we examined at length, within the context of section 4(3), the phrases "whose interests are adversely affected" and "who was aggrieved." We examined the legislative history of section 4(3) and concluded that these phrases marked a deliberate change from the prior formula for review of land use decisions. 294 Or at 86. We rejected the "substantial interest" requirement under the prior writ of review procedure. For the reasons therein expressed, we applied to section 4(3) the language from *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977) that "aggrieved" means something more than being dissatisfied with the agency's order, yet distinct from being "adversely affected" by it. 294 Or at 87.

■　　　In the context of section 4(3), "adversely affected" means that a local land use decision impinges upon the petitioner's use and enjoyment of his or her property or otherwise detracts from interests personal to the petitioner. Examples of adverse effects would be noise, odors, increased traffic or potential flooding. *See, e.g., Yamhill County v. Ludwick,* 294 Or 778, 663 P2d 398 (1983) and *Benton County v. Friends of Benton County, supra.*

■ In *Benton County* we construed the term "aggrieved" in section 4(3), as follows:

"A person whose interest in the decision has been recognized by the body making a quasi-judicial decision and who has appeared and asserted a position on the merits as an interested person, rather than only as a source of information or expertise, can be 'aggrieved' by an adverse decision within the meaning of section 4(3). As in *Marbet,* to be 'aggrieved' a person must be more than abstractly dissatisfied with the outcome after the fact. The decision must be contrary to the request or other position that the person espoused during the proceeding." 294 Or at 89.

Therefore, to have standing to petition LUBA for review in a quasi-judicial proceeding as a person "aggrieved," a person must meet a two-part test:

FIRST PART (applicable to all petitioners before LUBA in quasi-judicial proceedings):

1. The person filed a notice of intent to appeal; and

2. The person appeared orally or in writing before the local land use decision-making body.[2]

SECOND PART (as a person "aggrieved"):

1. The person's interest in the decision was recognized by the local land use decision-making body;[3]

2. The person asserted a position on the merits; and

3. The local land use decision-making body reached a decision contrary to the position asserted by the person.

■ This construction of "aggrieved" gives to the local land use decision-makers a gate-keeping responsibility for appeals to LUBA. Local decision-makers, by ordinance or otherwise, may determine who will be admitted or excluded as an interested person or limited to the status of a disinterested

---

[2] We do not here decide whether a person who is prevented from appearing before the local decision-making body because of deficient public notice of the local governing body's hearing, nevertheless can have standing to appeal to LUBA under section 4(3). *See also, Warren v. Lane County,* 297 Or 290, n 12, 686 P2d 316 (1984).

[3] The decision of who will be admitted or excluded as an interested person or limited to the status of a disinterested witness will be governed by local as well as state procedural standards applicable to the particular proceeding. *Benton County v. Friends of Benton County, supra,* 294 Or at 89.

witness in a quasi-judicial proceeding. *Benton County, supra,* 294 Or at 89. These determinations may vary according to the nature of the land use decision in dispute, the issues involved and the particular proceeding. If the decision-makers have not made such a determination, by ordinance or otherwise, it will be assumed that when a person appears before the local body and asserts a position on the merits, the person has a recognized interest in the outcome.

■ When the interests were not specifically recognized by the local decision-makers, LUBA will sometimes be able to discern from the record whether the person appeared at the proceeding to urge a position on the merits in his or her own behalf or merely as a disinterested witness, *i.e.,* a planner, engineer or economist. *Benton County, supra,* 294 Or at 89. Likewise, if a petitioner's status as an interested person or a disinterested witness is contested, LUBA may determine the status based upon the record, including any applicable ordinances.

■ The majority opinion in the Court of Appeals suggests that the definition of "aggrieved" stated by this court in *Benton County* renders the statutory provisions regarding entitlement to notice and adverse effect meaningless or extraneous. *Jefferson Landfill Comm. v. Marion Co., supra,* 65 Or App at 323. The Court of Appeals reasoned that this conclusion follows because anyone who appeared before the local governing body as an interested person and asserted a position on the merits which the local body did not adopt would have standing, without more, to appeal. This suggestion, however, ignores the gate-keeping determination by the local decision-making body of recognition of an interest in the person. Within the limits of applicable rules governing participation, persons who appear before the local governing body may be denied interested-person status. *See* footnote 2, *supra.* If so, the person nevertheless may have standing to petition LUBA under section 4(3) if the person was entitled as of right to notice and hearing prior to the decision to be reviewed *or* can make a factual showing of interests adversely affected by the decision. We acknowledge that, absent any limitation of who may appear as an interested person, the mere allowance of a person to appear and assert a position on the merits is sufficient to make a person an "interested person," with the

clear potential of the "aggrievement" ground subsuming the other two grounds, as predicted by the Court of Appeals.

## II. LUBA'S DECISION ON STANDING

■ The petition for review to LUBA must state "[t]he facts that establish that the petitioner has standing." Or Laws 1979, ch 772, § 4(6)(a). This would include the facts concerning a petitioner's appearance before the local governing body and those needed to meet one of the three statutory tests: (1) entitlement as of right to prior notice and hearing; (2) interests adversely affected; or (3) aggrievement by the decision.

Petitioners' statement of standing in their petition for review to LUBA read as follows:

> "The County Commissioners Hearing was Quasi-Judicial. Petitioner Jefferson Landfill Committee is a [sic] organization of 157 persons who studied the conditional use application and major partitioning request, attended the Commission Hearing, filed written and oral objections to the proposed landfill and who live within the Jefferson area most immediately impacted by the proposed landfill site. Jeff Fahey is an individual who owns a home in the vicinity and who was entitled to and did receive notice of both this site and a nearby site. He attended the hearing and gave oral and written testimony and documentary evidence."

### A. Standing of Jefferson Landfill Committee

LUBA's final order denied petitioner Jefferson Landfill Committee's (Committee's) claim of standing in either its representational or organizational capacity.[4] Respondents argued and LUBA found that the Committee did not allege sufficient facts to show that it had standing under section 4(3). We disagree.

■ An organization has standing, in its own right, to appeal a quasi-judicial decision when the section 4(3) criteria

---

[4] This court has neither examined nor approved the concept of "representational standing." *Benton County v. Friends of Benton County, supra,* 294 Or at 81. Because we hold that the Committee met the statutory test for organizational standing, we need not decide whether representational standing was established.

are met.[5] "Person," as used in section 4(3), "means any individual, partnership, corporation, association, governmental subdivision or agency or public or private organization of any kind." ORS 197.015(14). The definition of "person" clearly includes a committee, such as the Jefferson Landfill Committee, which falls under the rubric of a "private organization of any kind."

The Committee alleged that its members attended the hearing and made oral and filed written objections to the proposed landfill. Under our construction of "aggrieved," the benefit of which LUBA did not have, the Committee meets the standing requirements of section 4(3) because its members appeared before the local decision-making body; they effectively were recognized as interested persons by the local body; they testified on the merits; and the decision made was contrary to the position they asserted. Sufficient facts were stated in the petition for review to show the Committee's aggrievement.

Respondents argue that there is nothing stated in the petition for review to show that the Committee was "recognized" by the county. As noted above, absent a contrary finding by the local decision-makers or LUBA, it is assumed that a person who appeared before the local decision-makers and asserted a position on the merits is an interested person. The Committee's allegations are sufficient to show that its members' views were heard in opposition to the landfill site and, absent a contrary finding, it is assumed that its members appeared as interested persons. In this case, the Committee's position is strengthened by Marion County zoning ordinances, which provide, in part:

"111.010 HOLDING PUBLIC HEARINGS. * * * At any such hearing all persons shall be given an opportunity to be heard.

"111.020 APPEARANCES OF INTERESTED PERSONS, * * * Any person or persons desiring to be heard for or against the subject of the hearing may file with the Governing

---

[5] The test for an organization's standing to appeal a quasi-judicial land use decision to LUBA, under section 4(3), is different from the organizational standing requirements under the former writ of review. Therefore, cases such as *Clark v. Dagg*, 38 Or App 71, 588 P2d 1298, *rev den* 286 Or 637 (1979), which respondents cite, are inapposite.

Body, Hearings Officer or the Planning Commission, whichever holds the hearing, a statement in writing, or may appear and respond orally at the hearing, either in person or by attorney. * * *"

These ordinances apply to individual persons and associations.[6] In Marion County, any person desiring to be heard for or against the subject of the hearing may file a statement in writing or may appear and respond orally at the hearing as an "interested person." Because the Committee did this, it meets the county's definition of an "interested person." Thus, the Committee has alleged sufficient facts to have standing to petition LUBA for review in a quasi-judicial proceeding.

Because we hold that the Committee stated sufficient facts to establish entitlement to standing as "aggrieved by the decision," under section 4(3), we need not decide whether the Committee, which received prior written notice of the hearing, was "entitled as of right to notice and hearing prior to the decision."

### B. Standing of Jeff Fahey

Respondents contend that petitioner Fahey based his claim of standing on his alleged entitlement to notice. In his petition for review to LUBA, Fahey stated that he attended the hearing and gave oral and written testimony in opposition to the proposed landfill. He alleged that he was entitled to notice because he was aggrieved by the proximity of his land and home to the proposed landfill and also because he received prior notice of the hearing in the newspaper and in a written notice to the Committee of which he is a member.

■ LUBA's final order denied Fahey's claim of standing because his allegation of entitlement to notice was not supported by the facts which the parties agreed were to be considered concerning standing. We agree with LUBA's conclusion that the notice specified in Oregon Laws 1979, chapter 772, section 4(3)(b), as amended by Oregon Laws 1981, chapter 748, section 35, refers to "special" or individual notice, not notice by publication in a newspaper or notice as a committee

---

[6] Marion County Zoning Ordinance 120.315(b) governing solid waste disposal sites defines "person" to include "the State of Oregon, any individual, public or private corporation, political subdivision, governmental agency, municipality, industry, co-partnership, association, firm, trust, estate or any other legal entity whatsoever."

member. Furthermore, receiving notice is not necessarily the same as being "entitled as of right to notice and hearing."

 While we agree that Fahey has not alleged facts showing that he was entitled as of right to notice and hearing prior to the county's decision, LUBA would not be precluded from determining, based on the facts alleged, that Fahey meets either of the other tests for standing under section 4(3), *i.e.*, "adversely affected" or "aggrieved." In light of our conclusion in respect of the Committee, we find that Fahey alleged sufficient facts in the petition for review to show that he meets the test for aggrievement.

Fahey alleged that he appeared at the hearing before the county commissioners, gave testimony in opposition to the proposed action, and submitted written testimony and documentary evidence. As noted above, Marion County Zoning Ordinance 111.020 provides that any person desiring to be heard for or against the subject of the hearing may file a statement in writing or may appear and respond orally at the hearing as an "interested person." This Fahey did.

Thus, under our construction of "aggrieved," absent a contrary finding by the local decision-makers or LUBA, Fahey meets the standing requirements of section 4(3) because he was recognized by the local decision-makers as an "interested person" in conformance with Marion County Zoning Ordinance 111.020; he appeared before the local body and testified on the merits; and the decision made was contrary to the position he asserted.

## III. CONCLUSION

We hold that petitioners Jefferson Landfill Committee and Jeff Fahey have stated sufficient facts in their petition for review to show they are "aggrieved" under section 4(3) of Oregon Laws 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748, section 35, and thus sufficiently have alleged standing to appeal this quasi-judicial land use decision to LUBA. The Court of Appeals is reversed. This case is remanded to LUBA for further proceedings.