Argued and submitted April 9, affirmed on appeal; affirmed in part and reversed and remanded in part on cross-appeal August 6, 1986

APALATEGUI et al,
*Petitioners - Cross-Respondents,*

*v.*

WASHINGTON COUNTY,
*Respondent - Cross-Petitioner.*

LAHAIE et al,
*Petitioners - Cross-Respondents,*

*v.*

WASHINGTON COUNTY,
*Respondent - Cross-Petitioner.*

BROWN et al,
*Petitioners - Cross-Respondents,*

*v.*

WASHINGTON COUNTY,
*Respondent - Cross-Petitioner.*

(LUBA 85-043, 85-044, & 85-045; CA A39012)

723 P2d 1021

Edward J. Sullivan, Portland, argued the cause for petitioners - cross-respondents. With him on the briefs was Sullivan, Josselson, Roberts, Johnson & Kloos, Portland.

Alan S. Bachman, Chief Assistant County Counsel, Hillsboro, argued the cause for respondent - cross-petitioner. With him on the brief was John M. Junkin, County Counsel, Hillsboro.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, J.

## WARDEN, P. J.

Petitioners in these consolidated cases seek review of an order of the Land Use Board of Appeals (LUBA) which rejected some of their challenges to three Washington County ordinances. The ordinances amended the county's comprehensive plan, community development (zoning) code (CDC) and comprehensive plan maps. The county cross-petitions, seeking review of LUBA's action in sustaining some of petitioners' other challenges. We affirm on the petitions and reverse and remand in part on the cross-petition.[1]

Many of the issues in this case arise from Washington County's peculiar procedures for adopting and amending land use ordinances. Under the county charter, changes to the comprehensive plan, zoning code or specific zoning designations require individual notices to affected property owners and others in possession of the affected property. The notices must describe in detail the effect that the proposed changes will have on the recipient's property. The requirements are cumbersome for plan or zoning changes which would affect more than individual parcels or small, specific areas within the county.

As an alternative, the charter permits the county to make land use changes by adoption of not more than three ordinances a year, sending only a more general notice to all affected owners. Each of these "annual ordinances" may

---

[1] The county moved to dismiss the petitions for review on the ground that petitioners filed their brief one day late. If the brief was late, we must dismiss the petition. ORAP 5.76(1), which applies only to review of LUBA decisions, requires that a petitioner file its brief within 14 days after the filing of the petition for review. "Failure to file the opening brief within the time allowed by this rule will result in automatic dismissal of the petition." ORAP 5.80 forbids an extension of time to file a brief in a LUBA case. Petitioners mailed their petitions for review on February 26, 1986; this court received them on February 27, 1986. Filing the petitions on either date would have been timely. Petitioners filed their brief on March 13, 1986. If the date of mailing is considered to be the date when the petitions were filed, the brief was late; if the date the petitions were received is the date of filing, the brief was timely. In order for the filing of a petition for review to be complete upon mailing the party must *both* mail the petition by certified mail *and* submit the post office receipt to the Case Records Division. ORAP 1.35(1)(b); *see also* ORS 19.028. Petitioners mailed the petitions by certified mail and filed copies of the post office receipts with LUBA; however, they did not file the receipts with this court. Because they did not meet the requirements for the filing of the petition to be effective on the date of mailing, the date of receipt controls. Their brief was therefore timely, and we deny the motion to dismiss.

concern changes within only one of three categories: adoption or amendment of a comprehensive plan; re-zoning of property; or adoption or amendment of a zoning code.[2] An annual ordinance must be filed and available for public inspection no later than August 1 and must receive its first reading at a Board of County Commissioners' meeting in November. In practice the general notice describing these ordinances is enclosed with the property tax statements mailed in October. The Board may amend the ordinances if the notice informed property owners affected by the amendment that the ordinance would affect their property. The mailing of proper notice is essential to the validity of the ordinances. Wash Co Charter, §§ 100(c),(d); 102; 103.

As one would expect, and as they were apparently intended to do, the charter requirements create difficulties for county planners and for the Board. They must consolidate significant plan and zoning changes into not more than three single-purpose ordinances. They must file the ordinances in July but cannot consider them until November. It is likely that what is proposed in July may or may not be exactly what is considered in November, and there is a substantial probability that changes in a proposal will be made before ultimate adoption of the ordinance.[3]

The county knew in July, in a general way, what geographical areas it wished to consider for plan modifications and what changes it wished to make in the CDC. Work on those matters was not complete, however, and the three ordinances it filed on July 31, 1984, only outlined the intended changes. For instance, Ordinance 292, as filed, listed five geographical areas for which the county intended to revise the comprehensive plan; it also referred to other, undefined, necessary revisions. Ordinance 294 proposed modifications in the comprehensive plan maps to conform to the changes made by Ordinance 292; it necessarily had the same lack of definiteness as did Ordinance 292. Ordinance 293 proposed a

---

[2] The county charter allows more than one of the ordinances to apply to the same category, but no single ordinance may apply to more than one category.

[3] The County Planning Commission did not conclude its consideration of proposals to change these ordinances until February 20, 1985, over three months after the ordinances were first introduced at a Board meeting and over six months after they were filed.

number of changes in the CDC. As ultimately adopted, Ordinances 292 and 294 applied to only four of the original five geographical areas and made changes in the plan in other areas not originally listed. Ordinance 293 made changes in the CDC which had not been included in the original proposal.

The "General Notice of Land Use Change" mailed to all property owners in October described the general subject matter of each ordinance and stated that it was impossible to give a complete description of the effects of the ordinances. The introductory portion of the notice gave the date on which the Board would first consider the ordinances and warned recipients that they would not receive additional mailed notices. It included the following statement:

"PLEASE NOTE: THE FOLLOWING DESCRIPTIONS ARE GENERAL AND ARE BASED ON CURRENT INTENT. PRIOR TO FINAL ADOPTION, THE BOARD WILL HEAR TESTIMONY. BASED ON THIS TESTIMONY, THE BOARD WILL LIKELY CONSIDER SUBSTANTIAL AMENDMENTS TO THESE ORDINANCES WHICH MAY AFFECT YOUR PROPERTY. THEREFORE, EVEN IF YOUR PROPERTY IS NOT AFFECTED BY THESE ORDINANCES AS INTRODUCED, SUBSEQUENT AMENDMENTS MAY AFFECT YOU."

As the county's charter requires, the Property Rights Commission approved the notice.

Before considering the parties' contentions concerning various procedural requirements, we first consider the county's challenge to petitioners' standing. ORS 197.830(3) establishes the requirements which must be met by a person who wishes to appeal a quasi-judicial land use decision to LUBA.[4] The crucial question is whether petitioners were

---

[4] ORS 197.830(3) provides:

"Except as provided in ORS 197.620(1), a person may petition the board for review of a quasi-judicial land use decision if the person:

"(a)  Filed a notice of intent to appeal the decision as provided in subsection (1) of this section; and

"(b)  Appeared before the local government, special district or state agency orally or in writing; and

"(c)  Meets one of the following criteria:

"(A)  Was entitled as of right to notice and hearing prior to the decision to be

"aggrieved" by the county's decision. In *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 284, 686 P2d 310 (1984), the Supreme Court established a three-part test for determining when someone is aggrieved: whether the local body has recognized the person's interest in the decision, whether the person has asserted a position on the merits and whether the local body's decision was contrary to the position which the person asserted.[5]

■    Petitioners were clearly aggrieved under that test. Indeed, the county does not seriously contest their standing on some issues. Rather, it asserts that petitioners may not assign as error matters which they did not raise during the county's consideration of the ordinances. In this argument the county misunderstands the nature of the standing requirement. Standing concerns whether a party may bring a case to court—or, in this context, before an administrative appeals board—at all. Standing does not turn on whether the party has preserved particular issues. Petitioners have standing. If the county's real point is that petitioners may seek LUBA review only of issues which they raised in the local proceedings, we rejected an identical contention in *Lane County v. City of Eugene,* 54 Or App 26, 32-3, 633 P2d 1306 (1981), construing the predecessor of ORS 197.830(3), *see* n 5, *supra,* in the context of *former* Oregon Laws 1979, ch 772. We concluded that "it is not necessary for the party seeking LUBA review to have raised below the issues on which review is sought." (Footnote omitted.) We reject the county's assignment on the standing question.

■ ■    In their second assignment, petitioners assert that LUBA erred in affirming the ordinances because the county failed to follow statutory procedural requirements and

---

reviewed; or

"(B)  Is aggrieved or has interests adversely affected by the decision."

These requirements are more demanding than those for standing to appeal a legislative land use decision. *See* ORS 197.830(2). Because we hold that petitioners met the requirements of ORS 197.830(3), we do not decide whether the decisions in question were legislative or quasi-judicial.

[5] In *Jefferson Landfill Comm. v. Marion Co., supra,* the Supreme Court considered the predecessor statute to ORS 197.830(3). The relevant language of the two statutes is identical, and *Jefferson Landfill* therefore remains controlling on the meaning of "aggrieved." *See* 297 Or at 282 n 1.

because, as a result of that failure, the ordinances have no legal effect. ORS 215.060 and ORS 215.223 require ten days public notice before each board hearing on a comprehensive plan or a zoning ordinance.[6] The county published two notices which together listed most of the 14 dates on which the Board held hearings on these ordinances. However, the Board held hearings on dates that were not listed in the notices, including the date on which it adopted them. The date of each hearing held without published notice was announced at a hearing held pursuant to a published notice or at a hearing which was itself announced at a hearing held pursuant to public notice. We agree with the county's argument that the hearings for which no published notice was given were continuations of the hearings held pursuant to published notice and that the resulting ordinances are not therefore invalid.

An extended hearing process like that in which the county engaged necessarily requires continuances. Testimony may be long and complicated, there may be many persons to testify and the local government may have other matters that it must resolve, necessitating continuances. There is no rule which requires a hearing to proceed continuously without interruption until consideration of the subject for which it was called is finished, simply because the local government has not been able to give ten days published notice of a resumption of the hearing at a later time. The announcement of the continuance at the meeting is sufficient compliance with the statutes.[7]

■ Petitioners' remaining assignments concern alleged charter violations. They first assign error to LUBA's failure to reverse because Ordinance 294 made changes in more than one land use category. Ordinance 294 amended the comprehensive plan maps to comply with the changes Ordinance 292 made in the comprehensive plan. The county does not maintain separate zoning maps and apparently uses the comprehensive plan maps for zoning purposes. As a result, petitioners

---

[6] The county argues that this is a procedural matter and, because petitioners in fact received notice and appeared, they have not shown prejudice to their substantial rights. ORS 197.835(8)(a)(B). However, the statutes make the validity of the ordinances dependent on compliance with the notice requirements; therefore, petitioners need not show that a violation prejudiced them in order to prevail.

[7] This case does not involve an original hearing for which notice was published and which was then continued time and again over a period of several months. The two published notices gave most of the dates on which hearings were actually held. There is no indication that the county attempted to circumvent the statutory requirements.

argue, Ordinance 294 actually amended both the zoning ordinance and the comprehensive plan, thereby violating the charter's single subject requirement. Petitioners are incorrect. The fact that the county uses the comprehensive plan maps for zoning purposes does not make those maps part of a zoning ordinance. Nothing in the charter requires the county to maintain two separate sets of maps.

■ Petitioners next claim that LUBA erred in not reversing because the notice sent to all property owners lacked the specificity required by the charter. Although the notice did not give detailed information on the proposed changes, it could not have done so without becoming so cumbersome that it would have been less effective as notice than it was. The charter requirement that all comprehensive plan changes be included in one of the annual ordinances inevitably requires that the "general" notice *be* general. The notice informed the county's property owners that changes were in the works, gave them an idea of the nature of those changes and told them where they could learn more.[8]

■ Petitioners assign error to LUBA's failure to reverse because the ordinances the county filed in July lacked the specificity required by the charter. The ordinances, as filed, pointed out the areas in which the county intended to make changes. The county complied with the charter requirements for notice and hearing before adopting substantive changes in the ordinances as originally filed. The charter requires that the ordinances be on file for over three months before the Board can begin to consider them. The apparent purpose of the charter provision is to ensure early public knowledge of and involvement in the process. The ordinances were sufficiently specific.

■ Finally, petitioners assert that LUBA erred by amending its order to reverse and remand portions of Ordinance 293 rather than reversing the entire ordinance, as the conclusion of its original order had provided. LUBA considered petitioners' 31 assignments of error *seriatim,* sustaining some and rejecting others. At the end of the opinion the

---

[8] Petitioners also assert that, because the county failed to send notices of the ordinances to those cities which were affected by them, the ordinances are invalid. If that failure was a violation of the charter, it did not affect petitioners' substantial rights. *See* n 6, *supra.*

original order reversed Ordinance 293 because of certain assignments which LUBA had sustained. It did not mention other assignments concerning that ordinance which LUBA had also sustained, nor did it mention Ordinances 292 or 294, although LUBA had sustained assignments relating to them.

LUBA did not intend the summary at the end of its opinion to be its effective order. Rather, it intended each dispositive statement at the conclusion of its discussion of each assignment of error to constitute a portion of its order. The complete order is simply the sum of those statements. The modification of the opinion merely brought the closing summary more in line with the remainder of the opinion. It did not effect a substantive change and was not erroneous. We turn to the county's cross-appeal.[9]

The county's third assignment asserts that LUBA erred by considering petitioners' challenges to provisions of Ordinance 293 which simply re-adopted, without change, provisions of the predecessor ordinance. The county is correct. The reenactment of an existing ordinance is not a reviewable decision, any more than a codification of the ordinance would be, at least in the absence of any contention that the goal compliance of the reenacted provisions has been affected by other provisions of the new legislation, *compare 1000 Friends of Oregon v. Jackson Co.,* 79 Or App 93, 718 P2d 753 (1986), or any contention that there has been a change in the application of the reenacted provisions or the circumstances to which they apply. *Compare Wagner v. Marion County,* 79 Or App 233, 719 P2d 31 (1986). We reverse that portion of LUBA's decision.[10]

The county's seventh assignment asserts that LUBA erred in holding that a provision of Ordinance 293 violated ORS 215.416(8). Under the ordinance, a party of record who wishes to receive a mailed copy of a zoning decision is required

---

[9] The county withdrew two of its assignments at oral argument. A third—that LUBA erred by considering petitioners' challenge to a procedural ordinance—is moot. LUBA upheld the ordinance on the merits, and there is nothing about which the county can complain.

[10] It appears from petitioners' answering brief on the cross-petition that only a few of petitioners' assigned errors that LUBA sustained related to unamended portions of the code. We agree with LUBA's disposition of petitioners' challenges to new or amended code provisions as against the county's arguments in support of those provisions. On remand LUBA should amend its order to sustain petitioners' objections to the new matter only.

to provide a self-addressed, stamped envelope for that purpose. ORS 215.416(8) requires the county to give written notice of the decision to parties of record. The county attempts to distinguish between "giving" and "mailing" the notice, but it does not suggest how it intends to "give" written notice other than by mailing it. The ordinance improperly attempts to shift to the parties a burden which the statute places on the county. LUBA correctly sustained petitioners' objections to this provision.

The county's remaining assignments of error require little discussion. LUBA correctly invalidated the county's sign content regulations on the basis of our decision in *Ackerley Communications, Inc. v. Mult. Co.,* 72 Or App 617, 696 P2d 1140, *rev allowed* 299 Or 313 (1985).

LUBA noted a conflict between the definition of "mitigation" in the CDC and that in the comprehensive plan and suggested that the county could resolve that conflict on remand. It is not clear that LUBA actually decided anything. Assuming that it invalidated the CDC definition, its action was correct. The fact that the comprehensive plan will control over the CDC in case of a conflict is no justification for allowing a conflict to exist.

Finally, we are satisfied that LUBA's disposition of petitioners' challenge to the county's "lot of record" provisions is correct.

Affirmed on appeal; affirmed in part and reversed and remanded in part on cross-appeal.