Argued and submitted June 19, affirmed August 20, 2003

## FRIENDS OF JACKSONVILLE,
*Petitioner,*

*v.*

## CITY OF JACKSONVILLE
and First Presbyterian Church of Jacksonville,
*Respondents.*

2003-020; A121344

76 P3d 121

William H. Sherlock argued the cause for petitioner. With him on the brief was Hutchinson, Cox, Coons, Dupriest, Orr & Sherlock, P. C.

John R. Hasson argued the cause for respondent First Presbyterian Church of Jacksonville. With him on the brief were Alan D. B. Harper, and Hornecker, Cowling, Hassen & Heysell, L. L. P.

No appearance for respondent City of Jacksonville.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner, Friends of Jacksonville, seeks review of the Land Use Board of Appeals' (LUBA) dismissal of its challenge to a decision by the City of Jacksonville (city) approving the land use application of the First Presbyterian Church of Jacksonville (church) to develop a church building on church-owned property.[1] LUBA dismissed petitioner's challenge on the ground that the notice of intent to appeal the city's decision to LUBA was not filed within the 21-day deadline established by ORS 197.830(9).[2] We affirm, but for reasons different from those articulated in LUBA's opinion.

This is the second time the controversy over the development of the church's property has been before us. The first occasion was a review of LUBA's decision in *Friends of Jacksonville v. City of Jacksonville*, 42 Or LUBA 137 (2002), in which LUBA remanded the city's approval of the development request because it found the city's proceeding tainted by the participation of one city councilor who "believed he was elected on a mandate to support the proposed siting of the church and that for him, the only question was what conditions were necessary to mitigate the impacts the church would cause." *Id.* at 146. LUBA agreed with the petitioner that the councilor should have recused himself from participation in the matter, and it remanded the city's decision "to allow the council to consider the application without [the councilor's] participation." *Id.* LUBA did not reach the remaining assignments of error that challenged the city's findings and the merits of the city's approval, reasoning that it was premature to resolve those assignments. We affirmed

---

[1] Petitioner is a neighborhood association appearing on behalf of its members. In the proceedings before LUBA, it submitted affidavits from several of its members demonstrating that those members would be adversely affected by the city's approval of the church's land use application because they reside near the proposed church site and would be disturbed by the increased traffic and noise. That evidence sufficiently demonstrates that petitioner has standing.

[2] ORS 197.830(9) provides, in part, that "notice of intent to appeal a land use decision * * * shall be filed not later than 21 days after the date the decision sought to be reviewed becomes final." LUBA proceedings are initiated with a "notice of intent to appeal" as set out in ORS 197.830.

that ruling by LUBA without opinion in *Friends of Jacksonville v. City of Jacksonville*, 183 Or App 581, 54 P3d 636 (2002).

On December 3, 2002, the city council held a meeting to respond to LUBA's remand and to reconsider the land use application.[3] The city's notice of the meeting announced that testimony would be limited to disclosure of *ex parte* contacts by council members, and it stated that the public would be provided an opportunity to rebut any testimony in that limited respect. Some of petitioner's members appeared at the hearing and spoke in opposition to the limitation of issues, seeking to persuade the council that LUBA's remand required a full evidentiary hearing on the application in order to correct the error resulting from the tainted council member's participation. The council rejected those assertions and conducted the meeting in accord with the published notice. It refused to take evidence on the merits of the proposed land use. At the conclusion of the meeting, the council voted again to allow the proposed development. The city formally adopted the council's decision on January 7, 2003, and mailed a "Notice of Decision," which stated that it was being mailed on January 13, 2003.

Petitioner filed a notice of intent to appeal the city's decision with LUBA on February 3, 2003. Intervenor below, the First Presbyterian Church of Jacksonville, moved before LUBA to dismiss the appeal, asserting that petitioner failed to file the notice of appeal within the 21-day time limit established in ORS 197.830(9). As we noted earlier, ORS 197.830(9) provides that a notice of intent to appeal must be filed not later than 21 days after the decision sought to be reviewed becomes final. Petitioner responded that the city's decision was rendered without a hearing and, therefore, ORS 197.830(3) governed the filing of the notice of intent to appeal. That statute provides, in relevant part:

---

[3] The city's December 2002 meeting was the third time the city had responded to a remand from LUBA about the proposed church development. The city's initial decision denied the request for the development, and the church appealed that decision to LUBA. Thereafter, the church and the city agreed to a voluntary remand, memorialized in *First Presbyterian Church of Jacksonville v. City of Jacksonville*, LUBA No 00-041 (Feb 21, 2001).

"If a local government makes a land use decision without providing a hearing * * * a person adversely affected by the decision may appeal the decision to the board under this section:

"(a) Within 21 days of actual notice where notice is required; or

"(b) Within 21 days of the date a person knew or should have known of the decision where no notice is required."

Petitioner asserted in addition that, where an unincorporated association in its representational capacity challenges a local decision made without a hearing, the appeal period for filing an appeal with LUBA begins on the latest date one of its members receives actual notice of the decision. LUBA noted that, according to petitioner, some of its members did not receive notice of the city's decision on remand until January 12, 2003, making February 2, 2003, the appropriate deadline for filing a notice of intent to appeal.[4]

LUBA resolved the motion by relying on ORS 197.830(9). It concluded that the notice of intent to appeal was not timely under that statute. LUBA disagreed with petitioner's argument that ORS 197.830(3) was applicable. It explained that the city's first and second decisions on the matter were issued following evidentiary hearings and that what followed was a "continuation of the local proceedings in that matter that have now resulted in a total of three final city decisions." The board concluded that the city's decision on remand was not rendered "without providing a hearing" within the meaning of ORS 197.830(3), and it added that it

"does not matter whether the city provided an additional 'hearing' following our most recent remand in this matter, within the meaning of ORS 197.830(3). ORS 197.830(9) applies, and ORS 197.830(3) does not apply. Because the notice of intent to appeal was not filed within the deadline established by ORS 197.830(9), this appeal must be dismissed."

---

[4] As LUBA also noted, February 2, 2003, was a Sunday and thus the operative date, according to petitioner, for purposes of timely filing was February 3, 2003.

In determining whether a "hearing" occurred within the meaning of ORS 197.830(9), our inquiry is guided by the discussion of statutory interpretation in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). We note at the outset that, with one exception requiring local government action within 90 days of a LUBA remand, the statutory scheme for notice, hearing, decision, and appeal to LUBA does not address procedures to be followed on remand from LUBA. *See* ORS 215.427; ORS 227.181. Rather, the statutes provide for procedures relevant to the initial determination on a land use application before the local government and not procedures to be followed should the local government be required to consider again some aspect or even the whole of its decision following LUBA's review.

■ In addition to the text and context of the applicable statutes, we consider relevant Supreme Court decisions interpreting those statutes. For instance, the Supreme Court considered the nature of a proceeding on remand from LUBA in *Beck v. City of Tillamook*, 313 Or 148, 151, 831 P2d 678 (1992). In that case, it framed the issue as whether the applicable statutes required the petitioners to seek judicial review of the legal issues that LUBA decided against them at the time or whether they could wait until after the remand and a second appeal of the local government's decision to assert those issues. The court characterized a case on appeal to LUBA after a previous remand to the local government as "one case," and rejected the notion that a petitioner could, on remand from LUBA, address some of the same issues that could have been raised and resolved in the initial LUBA review proceeding. During the course of its opinion, the court took note of ORS 197.763(7), a statute that speaks to the reopening of the record to admit new evidence.[5] The court explained,

---

[5] ORS 197.763(7) provides:

"When a local governing body, planning commission, hearings body or hearings officer reopens a record to admit new evidence, arguments or testimony, any person may raise new issues which relate to the new evidence, arguments, testimony or criteria for decision-making which apply to the matter at issue."

*Beck* was decided under a substantially similar version of ORS 197.763(7).

"When the record is reopened at LUBA's direction on remand, the 'new issues' by definition include the remanded issues, but not the issues that LUBA affirmed or reversed on their merits, which are old, resolved issues."

*Beck*, 313 Or at 153.

In *Hausam v. City of Salem*, 178 Or App 417, 37 P3d 1039 (2001), we considered the import of the Supreme Court's decision in *Beck* with regard to a different set of circumstances. In *Hausam*, pursuant to LUBA's remand, the city planning commission held an evidentiary hearing on a subdivision request and thereafter approved the request. The petitioner, who did not attend the hearing, sought to have the approval vacated so that he might provide testimony in opposition to the revised subdivision request. He argued that the city should have provided 20 days' notice before the hearing was held, citing ORS 197.763(3) in support of his argument. The commission refused to reopen the matter, reasoning that the 20-day notice requirement set out in ORS 197.763(3) was applicable only to notices of a hearing on an application for a land use decision and not to remands. On appeal, LUBA did not reach the matter of whether the 20-day notice requirement applied to remand proceedings, reasoning that the petitioner had failed to demonstrate that his rights were prejudiced by the circumstances of his failure to receive the notice. *Id.* at 420.

On review, in response to the petitioner's claim that he was entitled to 20 days' notice under ORS 197.763(3), the city argued that the initial hearing before the city on the subdivision request and the subsequent hearing following remand were simply two phases of the same case. According to the city, the hearing on remand should, therefore, be considered a second evidentiary hearing, and the appropriate notice under the statute should be given 10 days before the first evidentiary hearing.[6] We disagreed, explaining that,

"while the city's proceedings pursuant to the remand may be understood to be part of the subdivision case as a whole, it does not follow that an evidentiary hearing held in

---

[6] Under ORS 197.763(3)(f), notice must be mailed 20 days before the evidentiary hearing or, if two or more hearings are held, 10 days before the first hearing.

response to a remand is part of the original evidentiary proceeding before the city. The city's initial evidentiary process was closed with the final subdivision approval. No further evidentiary hearings were then announced or contemplated. That approval was appealed to LUBA and, as explained above, LUBA's disposition required that certain evidentiary matters be reconsidered and addressed. In this case, the city's compliance with the remand is a new phase of the case requiring one or more new evidentiary hearings."

*Hausam*, 178 Or App at 422-23.[7]

The Supreme Court's opinion in *Beck* and our opinion in *Hausam* establish that a proceeding before a local government on remand from LUBA remains the same case that existed before the remand for purposes of exhaustion of issues, but the hearing after remand should be regarded as a discrete proceeding for purposes of notice. However, neither case provides the answer to the issue here. To the extent that LUBA's reasoning in this case is based on a related proposition, that the city's decision following the most recent remand is a continuation of a single proceeding and therefore what was held after the last remand was a continuation of the hearings held before remand, we are not persuaded. Rather, we believe that the correct analysis requires us to consider the nature of the city's proceeding on remand and which statutory provisions governing appeals from land use decisions as set out in ORS chapters 197 and 227 are applicable, in order to identify the time limits for filing a notice of intent to appeal to LUBA.

ORS 197.015(10)(a) defines "land use decision" to include

"(A) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i) The goals;

"(ii) A comprehensive plan provision;

_____

[7] We noted that we expressed no view as to what notice would have been required had the city been required to address only matters of law. *Hausam*, 178 Or App at 423 n 5.

"(iii)   A land use regulation; or

"(iv)   A new land use regulation[.]"

Presumably, a local government action on a land use matter following remand from LUBA will result in another application of the land use legal criteria, whether goals, a comprehensive plan, implementing ordinance, or state law. A decision on remand, therefore, remains as much a "land use decision," as defined in ORS 197.015(10), as was the decision before LUBA's review and remand. It is reasonable to conclude that, because the decision on remand remains a land use decision, the legislature intended that the statutory procedures set out for achieving and seeking review of that decision to remain the same as those that were applicable to the initial local government's decision on the matter. That implication also is supported by the fact that the legislature has not enacted any particular statutes that control the procedure on remand from the scope of the initial hearing. As discussed earlier, ORS 197.830(3) provides for time limits for the filing of a notice of intent to appeal to LUBA when "a local government makes a land use decision without providing a hearing[.]" It necessarily follows that, when ORS 197.830(9) is read with ORS 197.830(3), the time limits in ORS 197.830(9) are applicable when a "hearing" is held.

We next consider whether the city's proceeding on remand involved a "hearing" as that term is used in ORS chapters 197 and 227. ORS 197.830 refers in several subsections to a hearing and hinges the deadline for the filing of the notice of intent to appeal on whether or not the local government provided a "hearing," but the statute does not otherwise define the term. The word is used but also not defined in ORS 227.160 to 227.186, the statutes addressing city land use decision-making. Notwithstanding the lack of an explicit definition, the broader context in which the word appears suggests that the term refers to a proceeding held to consider a pending application. *See* ORS 227.175(3) and (10), which require, respectively, "at least one public hearing on the application" (before the city) and offer, as an alternative, approval or denial of applications for permits without a hearing, provided that certain notice and opportunity for adversely affected or aggrieved persons to appeal within the

local government structure are followed. Also, ORS 227.175(5) requires that hearings may be held "only after notice to the applicant and other interested persons and shall otherwise be conducted in conformance with the provisions of ORS 197.763." In addition, ORS 197.763 states that the procedures set out in the statute "shall govern the conduct of quasi-judicial land use hearings conducted before a local governing body, planning commission, hearings body or hearings officer on application for a land use decision and shall be incorporated into the comprehensive plan and land use regulations[.]" There follows in the statute a comprehensive list of notice requirements, both for notification of an upcoming local government quasi-judicial proceeding, including notice of the applicable criteria, and for notice of the decision rendered. Also included in the statute are provisions for continuing hearings, extending the time for receipt of evidence, and reopening a record.

■■ As relevant to counties, a similar functional definition of "hearing" as described above is evident. ORS 215.402(2), which governs county land use hearings, defines "hearing" to mean

"a quasi-judicial hearing, authorized or required by the ordinances and regulations of a county adopted pursuant to [listed statutes]:

"(a) To determine in accordance with such ordinances and regulations if a permit shall be granted or denied; or

"(b) To determine a contested case."

A "contested case" is defined in ORS 215.402(1) as a

"proceeding in which the legal rights, duties or privileges of specific parties under general rules or policies provided under [listed statutes], or any ordinance, rule or regulation adopted pursuant thereto, are required to be determined only after a hearing at which specific parties are entitled to appear and be heard."

The description of the process in ORS 197.763 and the definition of "hearing" applicable to county proceedings are sufficiently related to suggest that they embody the same legislative intent. That is, the word "hearing" referred to in ORS chapters 197, 215, and 227 has the same meaning: it

refers to a quasi-judicial proceeding held to determine whether an application for a land use permit should be granted. Of course, whether or not a permit should be granted depends on the law applicable to the proposal and to the facts underlying the application. A "hearing," then, as used and described above, connotes a proceeding to gather evidence about the application, or to hear and consider argument on issues of fact and/or law relevant to the application for a land use permit.

■      We apply that understanding to the facts in this case. The city's meeting provided a forum for a public declaration of *ex parte* contacts by council members, and its invitation to the public to offer rebuttal evidence regarding any such contacts constituted a hearing in the sense that it provided an opportunity to the public for presentation and rebuttal of evidence on a matter relevant to whether or not the pending application for development should be granted or denied. To be sure, the scope of the evidence allowed to be presented at the meeting was limited, but, nonetheless, it was a proceeding conducted to take and consider evidence relevant to the grant or denial of the permit. As such, the consideration of *ex parte* contacts was part of the quasi-judicial process leading to a decision to grant or deny the application for the land use permit. We conclude therefore that the city council's meeting of December 3, 2002, constituted a "hearing" as the term is used in ORS 227.175 and ORS 197.830. It follows that the time limits for appeal under ORS 197.830(9) govern as LUBA held.[8]

Affirmed.

---

[8] Our conclusion that LUBA properly dismissed petitioner's appeal makes it unnecessary to consider petitioner's first assignment of error, in which petitioner asserts that it was entitled to a full evidentiary hearing after LUBA's prior remand.