Argued and submitted June 21, affirmed in part, reversed in part and
remanded September 8, 2016

Simon TRAUTMAN
and Nena Lovinger,
*Petitioners,*

*v.*

CITY OF EUGENE
and Oakleigh Meadow Co-Housing, LLC.,
*Respondents.*

Land Use Board of Appeals
2015076

Paul CONTE,
*Petitioner,*

*v.*

CITY OF EUGENE
and Oakleigh Meadow Co-Housing, LLC.,
*Respondents.*

Land Use Board of Appeals
2015077;

A162081

383 P3d 420

William K. Kabeiseman argued the cause for petitioners. With him on the brief was Garvey Schubert Barer.

Anne C. Davies argued the cause for respondent City of Eugene.

Zack P. Mittge argued the cause for respondent Oakleigh Meadow Co-Housing, LLC. With him on the brief was Hutchinson Cox.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DEVORE, J.

Petitioners Nena Lovinger and Paul Conte seek judicial review of a final order of the Land Use Board of Appeals (LUBA), affirming a decision by the City of Eugene (city) to grant approval to Oakleigh Meadows Co-Housing, LLC (applicant) for a tentative planned unit development (PUD). Among other things, LUBA concluded that a public notice of a limited hearing was adequate, although the record later was reopened for new evidence and testimony, contrary to the notice provided. In their first assignment of error, petitioners argue that the city failed to provide adequate notice, thereby depriving Lovinger of the opportunity to respond to new evidence or testimony. On that point, we agree, reverse, and remand. As to petitioners' other assignments of error, we affirm LUBA's decision without discussion.[1]

This decision follows a prior decision concerning notice of proceedings involving applicant's tentative PUD, *Oakleigh-McClure Neighbors v. City of Eugene*, 269 Or App 176, 344 P3d 503 (2015). Applicant had applied to the city for approval of its tentative PUD, "a multi-unit residential development on 2.3 acres of land zoned low-density residential." *Id.* at 178. Simon Trautman submitted a letter in opposition, thereby becoming entitled to notice of subsequent proceedings.[2] The city hearings official conducted a hearing on the application. Trautman did not receive notice of the official's decision. *Id.* at 179. When others appealed to the Eugene Planning Commission, Trautman did not receive notice of that hearing, and he did not receive notice of the commission's order allowing the PUD application. *Id.* Neighbors appealed the order to LUBA, sending their notice

---

[1] Petitioners' second, third, and fourth assignments of error involve interpretation and application of general criteria for tentative PUD approval under Eugene Code (EC) 9.8320(5) (safe and adequate transportation systems), EC 9.8320(6) (public health and safety), and EC 9.8320(7) (public facilities and services).

[2] Lovinger also submitted a short email message opposing applicant's PUD. Her concern was that the greenway area near the proposed site would be adversely affected. Conte sent a number of messages in opposition to the PUD. Having sent written comments, they, too, became entitled to notice of a hearing of the planning commission on the matter. EC 9.7665(1)(e) (notice of a hearing required for "[a]ny person who submitted written comments in regards to the original application").

of intent to appeal to the same people to whom the city had given notice (*i.e.*, not Trautman). The city discovered its failure to have given complete notice and rectified the failure by giving belated notice to Trautman and others about the commission's decision on the PUD. *Id.* The neighbors likewise corrected their service of their notice of intent to appeal. Trautman moved to intervene in proceedings before LUBA, but LUBA denied Trautman's motion as untimely. *Id.* at 180-81. We reversed and remanded, concluding that Trautman's motion was not too late and that LUBA had erred in denying his motion to intervene. *Id.* at 188.

Thereafter, LUBA allowed Trautman's motion to intervene. LUBA found that the city's failure to have given him notice had deprived him of the opportunity to participate in the hearing before the planning commission on appeal. That opportunity would have allowed him to offer his opinion to the commission about the PUD proposal based on the underlying record before the hearings official. LUBA remanded the matter to the city to allow Trautman that opportunity to express his opinion.

The issue that we address concerns the notice and the proceedings that followed. The city scheduled a public hearing before the planning commission on July 28, 2015. The city gave a notice of a limited hearing, stating that the hearing would "remedy the procedural error that occurred in 2013 and *** allow Simon Trautman to testify." The notice explained, in relevant part:

"**Limited Participants**

"You are receiving this notice because you were involved in the hearing process when the matter first was presented to the hearings official and planning commission in 2013 and 2014. However, the purpose of this hearing is to remedy the procedural error that occurred in 2013 and to allow Simon Trautman to testify before the Planning Commission. **Accordingly, presentation of testimony will be limited to Mr. Trautman and to response by the applicant. If you are not Mr. Trautman or a representative of the applicant, you may not testify (either in writing or orally) but may attend and observe the public hearing.**

> **"Limited Scope of Testimony**
>
> "Testimony before the [Eugene] Planning Commission in a local appeal hearing from the Hearings Official is limited to evidence that was presented to the Hearings Official. The Planning Commission will not accept any new evidence from Mr. Trautman in a local appeal hearing."

(Underlining and boldface in original.)

Just before the July 28 hearing, Trautman submitted to the commission lengthy written testimony and several hundred pages of attachments. Among other things, Trautman suggested that the south side of the pavement of Oakleigh Lane, which was access to the PUD site, lay partially on private properties, so as to leave a narrower paved width in the public right of way. Given that, he raised safety concerns about accommodating emergency vehicles. At the hearing, the city attorney Davies advised the commission that it should decide whether to admit some of Trautman's materials, because some could be considered "new evidence" that was not in the record before the hearings official.[3] For the time being, the commission closed the hearing, awaiting further advice from Davies.

On August 12, 2015, Davies wrote a legal memorandum reviewing Trautman's materials in light of the Eugene Code (EC). As for Trautman's suggestion that some of the paving width encroached on several lots, Davies advised the commission that "any of the paved portion of Oakleigh Lane that lies outside the right of way that has existed for 10 years or more will be considered to have been acquired by the City as a prescriptive easement."[4]

Reacting to Davies's opinion, Conte and five other people wrote identically worded email messages, disputing that there was a prescriptive easement. They characterized Davies's legal advice as "new facts" that should entitle them to respond with their own "rebuttal" evidence. They urged that the record be reopened.

---

[3] The city and applicant contended that the portion of Trautman's submission that was new evidence was outside of the scope of evidence to be considered by the commission.

[4] *See, e.g., Montagne v. Elliot,* 193 Or App 639, 653, 92 P3d 731 (2004) (prescriptive easement where road deviated from recorded description of the way).

On August 17, 2015, the commission reconvened to deliberate. The commission determined that Trautman had proffered new evidence but that it was evidence on a point of concern that the commission wished to consider—a concern about safety if a portion of the street's pavement was not within the right of way. The commission voted to reopen the record, limited to evidence regarding the width and safety of Oakleigh Lane. The record was opened for a two-week period, followed by short periods for rebuttal evidence and arguments. During that time, Trautman and the applicant tendered surveys and information on the issue of safety access.

During a meeting on September 28, 2015, the commission also accepted into the record the message from Conte and the duplicates from others objecting to Davies's advice about a prescriptive easement.

On October 6, 2015, the commission issued a notice of its decision, finding access to be adequate and reaffirming applicant's tentative PUD application, and adding conditions on a minimum paving-width within the right of way.[5]

Trautman and Conte filed an appeal to LUBA, and Lovinger intervened, aligned as a petitioner. Lovinger argued that, under ORS 197.763(7), the city committed a procedural error when it voted to accept new evidence from the applicant after having stated in the July notice that it would not accept any new evidence. She did not object to the commission having accepted evidence from Trautman or the email message from Conte and others. Instead, Lovinger complained that she was not notified that she could provide comment or testimony at the public hearing on the appeal before the planning commission. That error, she contended, resulted in prejudice to her substantial rights. ORS 197.835(9)(a)(B) (board required to reverse or remand land use decision under review if the board finds that a failure "to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner").

---

[5] Expert testimony supported a paving width of at least 14 feet. A survey showed "a very small area * * * that only has 13.7 feet of paving within the right of way." One condition of approval required the applicant to assure 14 feet of paving width.

LUBA affirmed the city's decision, concluding that the city did not commit error. LUBA explained that "[petitioner] * * * failed to identify a procedure that the city violated." LUBA opined that no authority required the city to either "adhere to the the procedure set out in the initial notice" or "to provide individual written notice to [petitioner] that the planning commission continued the hearing and that it ultimately voted to reopen the evidentiary record."

In their petition for judicial review, petitioners reiterate that the city erred by giving a misleading notice or by reopening the record without providing further notice to Lovinger. They rely on ORS 197.763(7) as implicit authority.[6] Applicant and the city respond that ORS 197.763(7) does not include a notice requirement for interested parties when a record is reopened. They argue that Lovinger did receive adequate notice of the hearing because she was apprised of the July 28 hearing and she merely failed "to follow the progress of the application."

"We review LUBA's legal conclusions to ascertain if they are 'unlawful in substance,' that is, if LUBA's opinion represents a mistake of law." *Neighbors for Livability v. City of Beaverton*, 178 Or App 185, 194, 35 P3d 1122 (2001). Because LUBA's legal conclusions involve an issue of statutory construction, we apply the principles of statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *as modified by State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Generally, we "look to the text of the statutes in question and the statutory context within which they appear." *Hammer v. Clackamas County*, 190 Or App 473, 481, 79 P3d 394 (2003), *rev den*, 337 Or 34 (2004). Here, we examine ORS 197.763(7) in the context of related statutes that govern the proceedings of the planning commission.

---

[6] ORS 197.763(7) provides:

"When a local governing body, planning commission, hearings body or hearings officer reopens a record to admit new evidence, arguments or testimony, any person may raise new issues which relate to the new evidence, arguments, testimony or criteria for decision-making which apply to the matter at issue."

The planning commission reviews, in an appellate role, the decision of a hearings officer on a permit. *See* ORS 227.160(2) ("'Permit' means discretionary approval of a proposed development of land[.]"); ORS 227.175 (an application for a permit is submitted to hearings officer when required by city); ORS 227.180 (review of decision of hearings officer by planning commission as "appellate authority"). In relevant part, ORS 227.180(1)(a) provides, "The procedure for such an appeal or review shall be prescribed by the council[.]" Accordingly, the City of Eugene prescribes the procedure for an appeal to the planning commission in EC 9.7650 through 9.7685.

When the commission reviews on appeal, EC 9.7655(2) provides, in part, "No new evidence pertaining to appeal issues shall be accepted[,]" and EC 9.7655(3) adds, in part, "The appeal shall * * * be based on the record, and be limited to the issues raised in the record that are set out in the filed statement of issues." The source of a notice requirement is EC 9.7665. It requires that the notice shall include, among other things, a "general explanation of the requirements for submission of testimony and the procedure for the conduct of hearings[,]" and a "brief summary of the local decision making process for the decision being made." EC 9.7665(2)(f), (j).

Just as ORS 227.180(1)(a) points to the city code for planning commission procedures on appeals, the city code points back to a statute on quasi-judicial hearings. That is, EC 9.7675 provides:

"The planning commission shall conduct a public hearing *according to quasi-judicial procedures in State law* and as set forth in EC 9.7065 through 9.7095, Quasi Judicial Hearings."

(Emphasis added.) In effect, EC 9.7675 incorporates the relevant parts of ORS 197.763—the statute setting forth quasi-judicial procedures on land use decisions—and makes relevant parts applicable to an appellate hearing before the planning commission. That would certainly be the case when, contrary to EC 9.7655, the commission changes the nature of the proceeding from a hearing to review the closed

record of an earlier proceeding to an open hearing entertaining new evidence as would a hearings official.

The necessary content of a notice of a quasi-judicial evidentiary hearing is described at ORS 197.763(3). Among the requirements, a notice must describe the proceeding by explaining the nature of the application, the uses that could be authorized, and the criteria that apply to the application. ORS 197.763 (3)(a), (b). The notice must include a warning that a failure to raise an issue will waive it, precluding subsequent review of that issue. ORS 197.763(3)(e). Importantly, the notice must "[i]nclude a general explanation of the requirements for submission of testimony and the procedure for conduct of hearings." ORS 197.763(3)(j).

Similarly, EC 9.7665(2)(d) requires that a notice of an appeal to the planning commission include the nature of the application and the proposed use that could be authorized. More particularly, the notice must provide a "general explanation of the requirements for submission of testimony and the procedure for conduct of hearings." EC 9.7655(2)(f). And, the notice must include a "brief summary of the local decision making process for the decision being made." EC 9.7655(2)(j).

Finally, ORS 197.763 assures participant rights when a hearing, once closed, is reopened to admit new evidence. In relevant part, ORS 197.763(7) provides, "When a local *** planning commission *** reopens a record to admit new evidence, arguments or testimony, any person may raise new issues which relate to the new evidence, arguments, testimony or criteria for decision-making which apply to the matter at issue."

Taken together, the notice and procedure provisions of EC 9.7655 and ORS 197.763 require a better notice of participatory rights than that given here before conducting a combined appellate-evidentiary hearing on a PUD application.[7] The notice that was given announced that the hearing would be restricted to testimony from Trautman and the applicant and that the hearing would not permit new

---

[7] Because the parties have not presented the question, we do not consider whether the commission may reopen the review hearing for new evidence.

evidence. Yet, as circumstances developed, the prior record was reopened to new evidence and additional testimony. As a result, circumstances made the notice misleading. Despite a review that was to have been on a closed record (EC 9.7655(2)), the commission reopened the record to new evidence. Despite a review that was to have been limited to the issues identified in the appeal from the hearings official's decision (EC 9.7655(3)), the commission opened the review to the limited issue of safety access, which the commission deemed to be a new, specific issue. Because the commission accepted evidence, ORS 197.763(7) was implicated, requiring that "any person" must have been permitted to address the new evidence or issue, contrary to the only notice that had been given.

Under those circumstances, we cannot conclude, as do the city and LUBA, that nothing requires a more accurate notice at the outset or a corrective notice when a closed, underlying record is "reopened" on review. City code implicitly requires accurate notice of the "local decision making process for the decision being made." EC 9.7665(2)(j). And, when a record is "reopened" so as to render inaccurate the notice once given, ORS 197.763(3) and (7) implicitly require that doing so must be consistent with the notice already given or a curative notice provided. If it were otherwise, interested participants, who lack notice of anything but a closed record, would not know that they have an opportunity to respond to the new evidence, arguments, or testimony, that ORS 197.763(7) promises them. In an earlier case, LUBA made the same observation when interpreting the statute:

> "Implicit in ORS 197.763(7) is the requirement that, when the local government re-opens the record to include new evidence, argument or testimony, it must either do so at a hearing or meeting that is a previously announced or noticed continuation of the earlier evidentiary proceedings, *or otherwise provide reasonable notice to the participants of earlier evidentiary proceedings that it has or intends to re-open the record.*"

*Gardener v. Marion County*, 56 Or LUBA 583, 589 (2008) (emphasis added). We endorse that interpretation of ORS 197.763(7) under these circumstances. We hold that, when

the notice announced a review proceeding on a closed record, but the commission reopened the record to new evidence, EC 9.7655 and ORS 197.763 require a corrective notice be given of the opportunity for any person to address the new evidence.

The city argues that, in any event, Lovinger was not one of the individuals entitled to notice. The city relies on EC 9.7315(2), which omits mention of notice to someone who has given written comments. However, that provision applies only to notice of the initial proceeding before the hearings officer, not to an appeal to the planning commission. Another provision applies here. Whenever an initial decision is appealed to the planning commission, EC 9.7665(1)(e) requires that notice of the hearing shall be mailed to "[a]ny person who submitted written comments in regards to the original application." Lovinger's brief email message, which was included in the hearings official's record, qualified her as a person entitled to notice of the hearing before the planning commission. EC 9.7665(1). Lovinger received notice of a limited hearing, but not notice of the proceedings that ensued.

We do not agree with the city or applicant that Lovinger had adequate notice because she received the initial notice and that she simply failed "to follow the progress of the application" to learn that additional evidence or argument would be accepted. We rejected a similar argument in *Hausam v. City of Salem*, 178 Or App 417, 37 P3d 1039 (2001). In that case, the petitioner asserted that the city had failed to provide timely notice of a hearing about approval of a subdivision plat. After remand from LUBA, the applicants amended their subdivision plat to respond to the deficiencies. The planning commission scheduled a hearing on the amended plat for February 6, 2001. *Id*. at 419. The petitioner objected that a 10-day notice of the hearing was untimely, because it failed to provide 20 days' notice as required by ORS 197.763. *Id*. at 420. Recognizing the recent notice was short, the city and the applicant argued that the notice requirement had been satisfied by an earlier notice of the initial proceeding, because "the initial hearing before the city and the hearing following remand are simply two phases of

the same case." *Id.* at 421. We rejoined that the hearing in question "was not simply another in a string of announced evidentiary hearings on the initial application[,]" and we concluded that the city "was obligated to provide * * * notice of the new evidentiary hearing." *Id.* at 423.

We distinguished *Apalategui v. Washington Co.*, 80 Or App 508, 513-14, 723 P2d 1021 (1986), where proper notice was given for a hearing that was extended with a continuance announced in the noticed meeting. In *Hausam*, we explained that "[p]ersons otherwise entitled to participate in a land use proceeding on remand should not be required to inquire of the local government, repeatedly and at close intervals, as to when and where any remand hearing will be held." 178 Or App at 423. Because the hearing after remand was a new hearing, we observed that it should not be "the responsibility of the interested participants to closely monitor a local government to ensure that the opportunity to exercise the right of participation is not missed." *Id.* at 423-24. We concluded that the petitioner suffered prejudice to a substantial right because he "had an inadequate opportunity to participate in the remand process." *Id.* at 425.

In this case, notice was not compromised as in *Hausam* by being sent too few days before a hearing. Notice was compromised by the content that the notice itself contained. Conscious of the limited purpose of the remand, the commission's notice warned that the hearing would only serve to provide Trautman the chance to speak about the PUD proposal based on the prior record before the hearings official. No new evidence would be received, and, excepting the applicant, no others would be heard. Circumstances proved a narrow notice wrong.

With irony, Lovinger observes, "If the City had followed the limitations set out in that notice, only allowing the two selected parties to submit argument and not new evidence, there would have been no error." In order to entertain Trautman's concern about access, the commission opened the record to evidence limited to the issue involving paving width and safety. Faced with the reaction to its legal advice, the commission also accepted the message from Conte and the duplicates from others. No doubt, the commission sought

to ensure a sound decision based on complete information and, in a spirit of openness, also accepted the email messages it had received. In admitting new evidence, the commission entitled Lovinger or others to add their comments about the new evidence. *See* ORS 197.763(7) (allowing "any person" to respond to new evidence, arguments, or testimony). The forbearance granted to critics Trautman and Conte entitled fellow critic Lovinger to the same.

Lovinger cannot be presumed to have known about that opportunity unless given notice.[8] As far as the record reflects, she had no reason to have assumed from the limited notice given, that the opportunity would later become available. The record contains no information that, after the notice of a limited hearing, Lovinger was somehow alerted by fellow critics to the opportunity that was provided to Trautman or, later, to Conte.[9] Before LUBA, Lovinger identified herself as secretary of LandWatch Lane County and interposed an affidavit attesting,

> "Until I received the City's notice of the revised final order, I was completely unaware that the Eugene Planning Commission had reopened the record for evidence and allowed parties *other than* the applicant and Mr. Trautman to submit testimony, including evidence."

(Emphasis added.) She continued,

> "If I had been notified that the hearing was being reopened to allow additional testimony and evidence from parties *other than* the applicant and Mr. Trautman to submit testimony, I would have submitted testimony and evidence in opposition to the testimony and evidence submitted by the applicant * * *."

(Emphasis added.) Even if her statements imply that Lovinger *did* know that Trautman or the applicant could offer new evidence or testimony, the problem remains that the notice of a limited hearing did not tell Lovinger that she or "any person" was free to provide a response when the

---

[8] Trautman's counsel in earlier proceedings later became counsel for Lovinger and Conte before this court.

[9] We consider the possibility of actual knowledge because we cannot reverse and remand unless we can conclude that a procedure was unlawful and that "substantial rights of the petitioner were prejudiced thereby[.]" ORS 197.850(9)(a).

record was reopened to allow new evidence or testimony. *See* ORS 197.763(7) (so providing). The notice given remains misleading.

Under ORS 197.835(9)(a)(B), LUBA must reverse or remand a land use decision if the local government "[f]ailed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner[.]" The city failed to follow the procedure prescribed by EC 9.7665(2) and ORS 197.763(3) and (7) to have notified Lovinger of the nature of the hearing that occurred and the opportunity available to her. *See Hausam*, 178 Or App at 424 (petitioner entitled to have addressed amended proposal). Without notice of that opportunity, Lovinger suffered prejudice to her substantial right to participate. Accordingly, we reverse and remand in order that LUBA may instruct the city to provide notice of the opportunity of "any person" to address the added evidence or testimony on the access safety issue for which the record was reopened.

Affirmed in part; reversed in part and remanded.